**JOSTENS, INC., Petitioner, Appellant,**

v.

**MISSION INSURANCE COMPANY, Respondent,**

**Employers Insurance of Wausau, Petitioner, Appellant.**

No. C8–84–692.

Supreme Court of Minnesota.

April 4, 1986.

As Amended on Denial of Rehearing May 12, 1986.

162

Mark M. Nolan, St. Paul, for Jostens.

Sandra J. Skluzacek, Minneapolis, Robert E. Cattanach, St. Paul, for Employers Ins. of Wausau.

Michael C. Lindberg, Minneapolis, for Mission Ins. Co.

SIMONETT, Justice.

May an insured, who defends itself, settle its claim for defense costs with its underlying insurer on a loan receipt agreement and then recover its defense costs from its umbrella carrier when, at the time the defense was tendered to both insurers, both arguably had primary coverage? The trial court held the umbrella carrier was solely liable for the insured's defense costs, but the court of appeals, without reaching that issue, reversed, holding the insured was not the real party in interest. We reverse both the court of appeals and the trial court and remand for apportionment of the defense costs between the two insurers.

In April 1982, Larry Wepler, who had been discharged from his employment by plaintiff Jostens, Inc., in Missouri, sued Jostens for damages arising from his job termination. Wepler's complaint alleged four causes of action: (1) breach of a contract of employment; (2) breach of Missouri's "service letter" statute, Mo.Rev.Stat. § 290.140 (1978), which required an employer to issue a letter to a departing employee describing the employee's job duties and reasons for termination, by issuance of a letter that was incomplete, false and malicious; (3) wrongfully inducing Wepler to leave his former employment and wrongful discharge, thereby harming Wepler's reputation; and (4) fraudulently misrepresenting that Wepler had permanent employment contingent on satisfactory job performance, resulting in harm to Wepler's employment record and reputation. The complaint asked for $150,000 actual damages and $500,000 punitive damages.

Jostens carried general comprehensive liability insurance with defendant Employers Insurance of Wausau and an "umbrella" liability policy with defendant Mission Insurance Company. In May 1982, Jostens tendered defense of the Wepler lawsuit to Wausau. Wausau's policy provided the following coverage:

**A. Coverage P—Personal Injury Liability Coverage.** The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury other than bodily injury and

property damage (herein called "personal injury") sustained by any person or organization and arising out of any of the following offenses committed during the policy period * * * in the conduct of the named insured's business.

\* \* \* \* \* \*

Group B—The publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right to privacy * * *.

The policy also imposed on Wausau "the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent * * *." Wausau denied coverage for any of the Wepler claims, stating, among other things, there was no "personal injury" and that Jostens' "service letter" to Wepler was not a "publication or utterance" within its Group B coverage.

Jostens also tendered the defense to its umbrella carrier, Mission Insurance Company. Mission's policy provided coverage in excess of the underlying insurance liability limit, or for the excess over the deductible amount for occurrences not covered by underlying insurance, up to $25 million. Policy coverage included claims for personal injury caused by or arising out of an occurrence. "Occurrence" was defined as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period." The term "personal injury" included "mental ir ury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, * * * humiliation; also libel, slander or defamation of character or invasion of rights of privacy * * *." Under the policy, Mission was obligated to defend any claim against the insured not covered by the underlying insurance.

Mission also denied coverage of the Wepler claims, chiefly on the grounds that the claims did not arise out of an "occurrence" and the policy did not cover punitive damages; however, because of the third and fourth counts for wrongful discharge and fraud, which might be covered if unintentional, Mission offered to defend under a reservation of rights. Jostens rejected this offer, retained its own defense counsel, and advised Mission it would hold Mission responsible for the defense costs.

On April 7, 1983, Jostens advised Mission that Wepler had submitted a settlement demand of $200,000 and asked (unsuccessfully) for the insurer's participation in the settlement. One week later, Jostens settled with Wepler for $35,000. The settlement released Jostens from any claims for damages "including physical pain and suffering, harm to reputation and character and mental anguish, humiliation, pain and suffering flowing from tortious acts and omissions of Josten's, including alleged actions and statements taken or made by Josten's in connection with Wepler's employment and termination."

Jostens then commenced this action against both Mission and Wausau, seeking reimbursement for attorney fees and expenses of $90,158.02 incurred in defending the Wepler lawsuit plus interest, together with the cost of the $35,000 settlement, plus Jostens' fees and expenses incurred in bringing this action to establish coverage. Wausau and Mission both denied liability, and Mission also crossclaimed against Wausau. After the pleadings were complete, Jostens moved for summary judgment and Mission moved for summary judgment on its crossclaim against Wausau.

Before the motions were decided, Jostens entered into a loan receipt agreement with Wausau. Essentially, in return for $103,847 paid by Wausau to Jostens as a noninterest bearing loan, Jostens agreed it would dismiss its action against Wausau and pursue, at Wausau's expense, its action against Mission; further, that any sums recovered by Jostens from Mission would go to Wausau in repayment of the loan; that to the extent recovery was not made, the loan would be forgiven; and, finally,

that Jostens released Wausau from any claims of interest on the sums Jostens was seeking to recover.

In December 1983, the trial court granted Jostens' motion for summary judgment and denied Mission's motion for summary judgment against Wausau. The trial court found both Wausau and Mission provided coverage to Jostens and both companies had a duty to defend the Wepler action, a duty which both had breached. The trial court ordered, however, that Mission alone was liable for the Wepler defense costs, apparently reasoning that the loan receipt agreement sheltered Wausau from liability because the trial court observed that "[a]bsent the settlement by Wausau, plaintiff would be entitled to a judgment against both of the insurers and presumably [could] enforce it against either." The court further ordered Mission to pay Jostens $5,817.62, one-half of the fees and costs Jostens incurred in bringing this action. Finally, the court held Wausau alone liable for the $35,000 Wepler settlement, because "the primary insurer should bear that risk as contemplated by the respective policies." Neither Wausau nor Jostens has appealed from this portion of the order. In a memorandum accompanying an order dated March 16, 1984, denying Mission's post-trial motion for reconsideration, the court found that Mission's policy was not a form-following policy providing identical coverage to the Wausau policy, but a policy which provided broader coverage than the underlying policy.

Mission appealed. The court of appeals concluded Jostens was not a real party in interest and reversed the trial court, stating that Jostens was no more than a nominal plaintiff because it had recovered all its Wepler defense costs (except for relatively minor interest expense) from Wausau under the loan receipt agreement. *Jostens, Inc. v. Mission Insurance Co.,* 354 N.W.2d 575 (Minn.Ct.App.1984). We granted the petitions of Jostens and Wausau for further review.

The issues before this court are: (1) Did the court of appeals correctly rule Jostens was no longer a real party in interest in this lawsuit? (2) Did the trial court err in ordering Mission to pay Jostens all of its Wepler defense costs? and (3) Did the trial court err in ordering Mission to pay Jostens half of the reasonable attorney fees and costs incurred by Jostens in bringing this action?

## I.

■  We hold, notwithstanding the loan receipt agreement, that Jostens is a real party in interest entitled to maintain in its name the claim for the Wepler defense costs against Mission, and that the court of appeals erred in ruling otherwise.

*Blair v. Espeland,* 231 Minn. 444, 43 N.W.2d 274 (1950), controls. There we held that an insured who entered into a loan receipt agreement with its insurer remains the real party in interest to pursue the claim against a third party. Here Wausau, the general comprehensive liability carrier, chose to pay its insured Jostens the amount of Jostens' claim, but on a loan basis, *i.e.,* with the understanding that the money would be repaid to the extent recovery might be made from Mission, the umbrella carrier. Loan receipt agreements have long been recognized in this state and they are a useful device in disposing of insurance disputes. There is nothing improper or invalid about such a loan, and, "so long as there was an actual transfer, the motives of the transfer [will] not be gone into." *Blair,* 231 Minn. at 449, 43 N.W.2d at 277. *See also Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548, 556–57 (Minn.1977) (the loan receipt agreement permits the insured, "albeit fictitiously," to remain the real party in interest).

*Nordby v. Atlantic Mutual Insurance Co.,* 329 N.W.2d 820 (Minn.1983), cited by the court of appeals, is not in point. There Reverend Nordby's insurer had defended Nordby in a personal injury action, and we held that Nordby was not the real party in interest in a subsequent suit to recover the insurer's defense costs from another insurer that had denied coverage. Nordby was

not the real party in interest because he himself had incurred no defense costs, unlike this case where Jostens had paid its own way.

The loan receipt agreement changes nothing here. True, Jostens has been paid (except for some interest expense which, we might add, also gives it standing as a real party), and the dispute is primarily between the two insurers, but we continue to analyze the coverage issues between the insurers with Jostens as the real party plaintiff.

## II.

We now reach the main issue: Who is liable for the Wepler defense costs incurred by Jostens? Wausau, the general comprehensive liability carrier? Or Mission, the umbrella carrier? Or both? We conclude the obligation lies with both.

An umbrella policy, typically, requires the insured to carry underlying liability insurance up to a certain limit with a different insurance company. The umbrella insurer then provides an "umbrella" over this underlying coverage by agreeing to pay that part of any claim against the insured that exceeds the limits of the underlying coverage up to the limits of the umbrella. This arrangement enables the umbrella insurer to offer high limits at a relatively modest premium.[1] The umbrella policy is attractive to the prudent person who wants protection for the infrequent but always possible and much-to-be-dreaded catastrophic loss. *See* 8A J. Appleman, *Insurance Law and Practice* § 4909.85 at 452 (1981). The policy can be issued for a relatively modest premium because most claims are absorbed by the underlying insurer, and also because the umbrella insurer's defense costs are ordinarily less than those of other insurers. The cost of defense is no small item. Indeed, in this case defense costs far exceeded the amount paid to settle the claim.

While the underlying carrier is said to be primary and the umbrella carrier is said to be excess, this is not the same relationship as between two carriers in the usual primary-excess situation, where one insurer is primary because "closest to the risk," thereby leaving the other insurer as excess.

The complicating factor in this case is that Mission's policy is not a pure, "form-following" umbrella because, in some respects, it affords broader coverage than Wausau's policy.[2] For a claim arising *solely* under this broader coverage, Mission's coverage is primary, and, for such a claim, Mission is expressly obligated to provide a defense.[3] On the other hand, if a claim arises within the underlying coverage, Mission has no contractual obligation to defend the claim, although it may, at its option, elect to participate in the defense.[4]

A duty to defend an insured on a claim arises when any part of the claim is "arguably" within the scope of the policy's coverage, and an insurer who wishes to

---

1. Mission's umbrella provided $24.5 million of liability coverage for a premium of $14,875, while the estimated annual premium for Wausau's $500,000 underlying coverage was $45,235.

2. As one example, Mission's policy also affords coverage for "Advertising Liability," a coverage which Wausau's underlying policy expressly excludes.

3. Insuring Agreement II of Mission's policy reads: "As respects occurrences covered under this policy, but not covered under the underlying insurances as set out in the attached schedule or under any other collectible insurance, the Company shall: (a) defend in his name and behalf any suit against the Insured alleging liability insured under the provisions of this policy * * *."

4. Paragraph H of Mission's policy reads:

Except as respects Insuring Agreement II, the Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceedings instituted against the Insured but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably likely to involve the Company, in which event the Insured and the Company shall cooperate in all things in the defense of such claim, suit or proceeding.

escape that duty has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390 (Minn.1979); *Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247, 251 (Minn.1982).

Here, when Wepler filed his lawsuit, the two insurers disagreed whether Wepler's claims set out in his complaint were covered by Wausau's primary underlying coverage, or by Mission's "broader" umbrella coverage. Neither policy apparently covered Wepler's claim for breach of contract, so no duty to defend arose on that claim. On the other counts, however, a disagreement arose because, in part, the two policies used different language to describe what they meant by nonbodily "personal injury." Wausau's policy defined the term to be an injury arising out of, among other things, "[t]he publication or utterance of a libel or slander or of other defamatory or disparaging material * * *." Mission's policy defined "personal injuries" as including "mental injury, mental anguish, * * * humiliation; also libel, slander or defamation of character * * *." In this action, Jostens contends that Wausau's policy covers only damage to reputation from libel or slander, while Mission's policy affords broader coverage for mental suffering and anguish and humiliation. Jostens also apparently contends that Wepler's claims for wrongful discharge and fraud do not come under Wausau's coverage but are included under Mission's broader coverage, at least to the extent breach of contract damages are not involved and Jostens' conduct might be unintentional.

■ We look at the duty to defend as of the time Jostens tendered the Wepler suit papers to the two insurers. At that time, there were three possibilities: (1) Both insurers had coverage for the same Wepler claims, so Wausau's coverage would be primary and Wausau would have the sole duty to defend; or (2) the claims came only under Mission's "broader" umbrella coverage, so Mission alone had the duty to defend; or (3) some of Wepler's claims came under Wausau's coverage and some under Mission's broader coverage, so both insurers, to the extent primary, had some duty to defend. We conclude, as we believe the trial court implicitly concluded, that at the time Jostens tendered defense of the Wepler suit to Wausau and Mission, any of these three coverage situations was legitimately arguable. No one, however, sought a declaratory judgment to resolve the arguable issues of coverage and the duty to defend. Therefore, as the situation then existed, both Mission and Wausau owed Jostens a duty to defend at least some of the Wepler claims.

So the issue becomes: When both the underlying and umbrella carrier have a duty to defend because each arguably has primary coverage for alleged claims, and the insured proceeds with its own defense, against whom may the insured later recover its defense costs?

This court has held that when there is a bona fide dispute between two carriers with overlapping coverages as to which is primary, whichever undertakes to defend cannot pass on its defense expense to the other carrier. *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967), followed in *St. Paul School District No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 48 (Minn.1982), and *Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820, 824 (Minn.1983). The rationale is that there is no contractual relationship between the two insurers, and the insurer assuming the defense has no cause to complain because it is protecting its own interests and is only doing what it agreed and was paid a premium to do.

■ This case, however, is unlike *Iowa National*, *St. Paul School District*, and *Nordby*. In each of those three cases one of the two reluctant insurers nevertheless overcame its reluctance and accepted tender of the insured's defense, and then

later tried to recover its defense costs from the other insurer. In our case here, neither insurer undertook the insured's defense. The insured defended itself. The fact that Wausau has now "paid" Jostens' defense costs under a loan receipt agreement does not make Wausau like the insurers who actually incurred the defense costs in *Iowa National, St. Paul School District*, and *Nordby*, nor does it put Wausau in Josten's shoes. Wausau is a lender, not a subrogee, and nothing more. To repeat, we look at the situation as it was for Jostens at the time it was confronted with Wepler's allegations. Viewed from this standpoint, it hardly seems fair Mission should now be responsible for the entire costs simply because Jostens has selected Mission rather than Wausau to pay them. Who should pay the insured's defense costs should not depend on the whim or caprice of the insured, when, at the time the defense was needed, both insurers arguably had a duty to defend.

It should be remembered this is not the usual primary-excess insurance situation. Unlike the usual excess insurer, Mission has not contracted to defend claims covered by the underlying insurer and has calculated its premium rates accordingly. We need also keep in mind that any rule we fashion should not encourage two insurers with arguable coverage to adopt a "wait and see" attitude while leaving the insured to defend himself. Not all insureds can afford, like Jostens, to pay their own way initially, although any insured can, of course, bring a declaratory judgment action to resolve the duty to defend dispute before substantial defense costs are in-

curred. Insurers, too, in evaluating their exposures on a tendered defense, may want to get involved to protect their interests.[5]

We hold, therefore, where it can be argued, legitimately and in good faith, that either of two insurers has *primary* coverage for a claim, both insurers have a duty to defend that claim. If either insurer undertakes the defense, it is responsible for its own defense costs and cannot later seek reimbursement from the other. This is the *Iowa National* rule. If neither undertakes the defense and the insured defends himself, then the insured, as Jostens has done here, may bring an action and recover his costs in defending the claim from either or both insurers. If it is established that both insurers arguably had coverage at the time of the rejected defense tender, the insurers, as between them, shall be equally liable for the insured's defense costs; provided, however, where an umbrella policy is involved, as between the underlying insurer and the umbrella insurer, the underlying insurer shall be liable for the entire defense costs except as to those costs that the underlying insurer can show were for defending claims covered only under the umbrella insurer's "broader" or primary coverage.

We believe this rule will encourage two insurers, when tendered a defense, to resolve promptly the duty to defend issue either by some cooperative arrangement between them, or by a declaratory judgment action, or by some other means.[6] When an umbrella carrier is involved, our rule assigns more of the risk of liability for

---

5. Our court has dealt with the duty to indemnify, rather than the duty to defend, where umbrella insurance was involved, in *Continental Casualty Co. v. Reserve Insurance Co.*, 307 Minn. 5, 238 N.W.2d 862 (1976). There the umbrella excess carrier settled with the third-party claimant when the underlying carrier refused to do so. We held the umbrella carrier was subrogated to the insured's rights against the underlying primary carrier for breach of the primary carrier's duty to settle in good faith. In so deciding, we commented on the different kinds of coverage in an umbrella situation and the different rate structures.

6. Here Jostens chose to reject Mission's offer to defend under a reservation of rights, perhaps because Mission was tardy in implementing its offer, but more likely because it created a conflict of interest for Mission. Mission said its policy might cover wrongful discharge and fraud if unintentional. So, at the Wepler trial, it would be to Jostens' advantage to show its conduct was unintentional while it would be to Mission's advantage to show it was intentional. *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389 (Minn.1979).

defense costs to the underlying carrier, which, because it bargained for the primary coverage, seems appropriate.

■ Applying the foregoing rule to this case, if Wausau and Mission were ordinary primary-excess carriers, they would share Jostens' defense costs equally; however, Wausau is an underlying carrier and Mission is an umbrella carrier. Consequently, Wausau should pay all Jostens' defense costs except for those costs shown to be incurred in defending claims covered only under Mission's "broader" or primary coverage. Here the trial court ruled that Wausau alone was responsible for the $35,000 paid Wepler in settlement, which ruling has not been appealed, and seems to suggest Wausau had primary coverage for all the Wepler claims. Indeed, the trial court so stated but in a subsequent memo then said "Mission's coverage is different and in the view of this Court as applied to the underlying action broader than that provided by Wausau." The trial court did not, however, explain in what respects Mission's coverage was broader. We conclude, however, the record establishes as a matter of law that Wausau's policy covered Wepler's defamatory and disparaging claims [7] and that the wrongful discharge and fraud claims, at least insofar as unintentional conduct was involved, were solely within Mission's broader coverage. Consequently, Jostens is entitled to its costs in defending these latter two claims from Mission.

■ We remand, therefore, for the trial court to apportion the Wepler defense costs between Wausau and Mission. If defense costs for the two sets of claims are so inextricably intertwined they cannot be fairly sorted out, the costs may be equally divided. The amount of the defense costs remains, too, to be determined, the trial court having retained jurisdiction over this issue when it ruled on the motions for summary judgment.

### III.

The trial court ordered Mission to pay one-half of Jostens' attorney fees and costs in bringing this present action. Jostens says Mission should pay all its fees and costs and Mission says it should pay none. We affirm the trial court's ruling.

■ Both Wausau and Mission have been found in this action to have owed Jostens a duty to defend the Wepler suit. Jostens is entitled to recover its attorney fees and costs for successfully bringing this action. *Lanoue v. Fireman's Fund American Insurance Cos.*, 278 N.W.2d 49 (Minn.1979). Basic fairness, we think, dictates that both insurers having been found obligated to provide a defense, both should share equally the expense for having to be told their responsibilities.

Affirmed in part, reversed in part, and remanded.

7. As the trial court stated, "[T]he Wausau policy in endorsement number 14, section VIII, coverage P, provided coverage not only for libel or slander, but also for 'other defamatory *or disparaging material'* (emphasis supplied). The latter phrase seems to encompass the type of claim being pursued by Wepler."