**WOODDALE BUILDERS, INC., Respondent,**

v.

**MARYLAND CASUALTY COMPANY, d/b/a Zurich North America, defendant and third party plaintiff, Respondent,**

v.

**American Family Insurance, third party defendant, Respondent,**

**Western National Insurance Group, third party defendant, Respondent,**

**West Bend Mutual Insurance Company, third party defendant, Appellant (A04–1442), Respondent (A04–1612),**

**SafeCo, third party defendant, Respondent (A04–1442), Appellant (A04–1612).**

Nos. A04–1442, A04–1612.

Court of Appeals of Minnesota.

May 3, 2005.

Ernest F. Peake, Justin P. Weinberg, Leonard, O'Brien, Spencer, Gale & Sayre,

Ltd., Minneapolis, MN, for respondent Wooddale Builders, Inc.

Peter G. Van Bergen, Andrea E. Reisbord, Minard M. Halverson, II, Cousineau, McGuire & Anderson, Minneapolis, MN, for respondent Maryland Casualty Co., d/b/a Zurich North America.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, MN, for respondent Western National Insurance Group.

David Oskie, James M. Hamilton, Oskie, Reuter, Hamilton & Sofio, St. Paul, MN, for respondent American Family Insurance.

Gregory J. Johnson, Klay C. Ahrens, Johnson Provo–Petersen, LLP, St. Paul, MN, for respondent West Bend Mutual Insurance Company.

Ted E. Sullivan, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant SafeCo.

Considered and decided by HALBROOKS, Presiding Judge; SCHUMACHER, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

On appeal from summary judgment in a declaratory-judgment action, appellant West Bend Mutual Insurance Company argues that the district court (a) erred in its allocation-of-damages ruling by setting the end date for the allocation period as the date when the insured received notice of a pending claim, and (b) erred in its allocation-of-defense-costs ruling by holding that defense costs should be equally allocated between the insurers. Appellant American Economy Insurance Company seeks a clarification of the district court's order proposing that obligations should be apportioned on a pro-rata basis according

to the number of years an insurer is on the risk. Because we conclude that the district court erred in its allocation of damages and defense costs, we affirm the district court's judgment in part and reverse in part. We dismiss American Economy Insurance Company's appeal because the issue was not properly presented to the district court.

## FACTS

The material facts as determined by the district court are not in dispute. Respondent Wooddale Builders, Inc. (Wooddale) is a general contractor, primarily in the business of constructing single-family homes. In late 2000, the current owners of sixty stucco homes built by Wooddale from 1990 to 1996 began making complaints to Wooddale, alleging that defective construction or faulty workmanship resulted in water-infiltration and mold-growth problems in their homes. The homeowners filed claims against Wooddale to recover the costs necessary to repair the homes.

Appellant West Bend Mutual Insurance Company (West Bend), appellant American Economy Insurance Company (Safeco), respondent Maryland Casualty Company (Maryland Casualty), respondent American Family Insurance Group (American Family), and respondent Western National Insurance Group (Western National) are insurance companies that provided commercial-general-liability coverage under occurrence-based policies to Wooddale from November 13, 1990, through November 13, 2002. The policy periods are as follows:

American Family November 13, 1990—November 13, 1995

West Bend November 13, 1995—November 13, 1996

Safeco November 13, 1996—November 13, 1997

Maryland Casualty November 13, 1997—November 13, 2000

Western National November 13, 2000—November 13, 2002

Each of the insurance policies issued by the insurers contains standard language calling upon the insurer to defend and indemnify Wooddale with respect to any property damages resulting from an occurrence to which the insurance applies.

Wooddale tendered the homeowner claims to the insurers that are parties to this action, but no insurer provided payment for repairs. Wooddale commenced this lawsuit against Maryland Casualty in October 2002. Maryland Casualty, in turn, filed a third-party complaint against the other four insurers, seeking contribution and/or indemnity with respect to any payments that Maryland Casualty might be required to pay under its policies with Wooddale. The insurance companies disputed the extent of their obligation to indemnify Wooddale for any of the homeowner claims, but the insurers were involved to varying degrees in the investigation, settlement, and defense of the homeowner claims against Wooddale. Some of the homeowner claims were investigated and repaired; some claims have yet to be investigated. The insurers and Wooddale have settled some claims; others claims remain in dispute.

Affidavits received from various experts stated that the damage sustained by these homes was the result of repeated water-intrusion events, occurring over an extended period of time, with continual, progressive, and indivisible damage occurring to the homes. The damage cannot be traced to one solitary, identifiable, water-intrusion event. Rather, the decay in the homes was caused by repeated wetting over an extended period of time. Each wetting

reinvigorated fungal growth. The extent of the decay in each individual home was dependent on the frequency, intensity, direction, and duration of rainstorms since construction. According to an environmental health consultant, "[a]ll that one can say with a degree of reasonable scientific certainty is that the mold damage to any given building began during or after construction and that it continued or will continue until such time as the mold colonies are deprived of one or more of the conditions required for continued growth: food, water and warmth."

The parties filed cross-motions for summary judgment in April 2004. The parties agreed that liability should be allocated among the insurers pro rata by time on the risk. The parties also agreed that the starting point for the allocation of damages is the closing date on the purchase of the home. Additionally, the insurers stipulated that a claim for reimbursement of defense costs shall not be barred because of the absence of any loan-receipt agreement, and all insurers have otherwise waived the rule in Minnesota barring contribution toward defense costs without a loan-receipt agreement. The parties disagreed on the ending point for allocation of damages and the allocation-of-defense and investigative costs.

The district court granted summary judgment in June 2004. In its conclusions of law, the district court noted that Minnesota follows the "actual injury" or "injury-in-fact" rule with regard to insurance coverage. The district court set the starting date for allocation purposes as the closing date on the purchase of the home. The district court set the ending date for allo-

cation purposes as the date Wooddale was put on notice that a homeowner was making a claim for damages. Finally, the district court concluded that the insurers would bear the costs of defending Wooddale and investigating the homeowner claims equally, and not pro rata by their time on the risk. But no insurer would be obligated to share in the defense and investigation costs for a claim for which it was not on the risk.

The court entered judgment on this order on June 24, 2004. Both West Bend and Safeco appealed from this judgment. By order of this court, the appeals were consolidated.

**ISSUES**

I. Did the district court err by setting the ending date for allocation purposes as the date Wooddale received notice of a pending claim?

II. Did the district court err by allocating the costs of defending Wooddale and investigating the homeowners' claim equally?

III. Is Safeco's proposed clarification properly before this court?

**ANALYSIS**

■ On appeal from a summary judgment, this court determines whether there are any genuine issues of material fact, or whether the district court erred in its application of the law. *Offerdahl v. Univ. of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When, as in this case, the material facts are not in dispute, a reviewing court need not defer to the trial court's application of the law.[1] *Hubred v.*

1. Safeco, American Family, and Maryland Casualty contend that the appropriate standard of review is whether the trial court abused its discretion. The supreme court has stated that a trial court's "allocation decisions should be

reviewed under an abuse of discretion standard." *In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 417 (Minn.2003). The issue before the *Silicone* court was the district court's decision *to apply* the pro-rata-

*Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Generally, "Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992).

## I

West Bend challenges the district court's ruling setting the ending date for allocation purposes as the date that Wooddale received notice of a homeowner's pending claim, arguing that the allocation period should extend until the damage is repaired, removed, or contained.

When allocating damages between multiple insurers on the risk for environmental clean-up costs, Minnesota follows the "actual-injury" or "injury-in-fact" theory to determine which policies have been triggered by an occurrence causing damages for which an insured is liable. *N. States Power Co. v. Fidelity & Cas. Co. of New York*, 523 N.W.2d 657, 662 (Minn. 1994) (hereinafter *NSP*). Under the actual-injury theory, "only those policies in effect when damage occurred are triggered." *Id.* "The essence of the actual injury trigger theory is that each insurer is held liable for only those damages which occurred during its policy period; no insurer is held liable for damages outside its policy period." *Id.* Because the discharge of environmental pollutants is continuous and repetitive and cannot be traced to one discrete, identifiable event, "the unidentifiable individual instances [merge] into one continuing occurrence," and there is one occurrence during each triggered policy period. *Id.* at 664.

Acknowledging that damage allocations are by nature fact-dependent and that trial courts should be given flexibility, the *NSP* court adopted the pro-rata-by-time-on-the-risk allocation scheme:

> This method assumes that the damages in a contamination case are evenly distributed (or continuous) through each policy period from the first point at which damages occurred to the time of discovery, cleanup or whenever the last triggered policy period ended. Each triggered policy therefore bears a share of the total damages proportionate to the number of years it was on the risk relative to the total number of years of coverage triggered.

*Id.* at 663. When, as in the *NSP* case, the damages occur over multiple policy periods, the trial court "should presume that the damages were continuous from the point of the first damage to the point of discovery or cleanup." *Id.* at 664. So, for example, if the contamination occurred over a period of ten years, one-tenth of the damage would be allocated to the insurer that was on the risk for one year. *Id.* And three-tenths of the damage would be allocated to the period of time a three-year policy was in force. *Id.*

Here, under the district court's allocation dates, each triggered insurer bears a share of the total damages proportionate to the number of years it was on the risk, relative to the number of years between the date of closing and the date that Wooddale received notice of a pending claim. The district court did not assign liability for damages as a result of ongoing decay to the homes from the date of notification until the date of remediation. Accordingly, either no insurer is liable for post-notification damages or each triggered insurer is potentially liable for post-notification damages even if a separate

by-time-on-the-risk method in allocating damages among multiple insurers. *Id.* Here, the issue is the district court's application of this

method to the facts presented, and this court reviews the district court's conclusions de novo.

insurer provided Wooddale coverage during that period.

Minnesota · authority supports West Bend's position that the appropriate ending date is the date of remediation. Although "the length of the allocation period was not at issue in *NSP*," the *NSP* court instructed that damages could be allocated continually through the time of discovery, cleanup, or whenever the last triggered policy period ended. *In re Silicone Implant Ins. Coverage Litig.*, 652 N.W.2d 46, 61 (Minn.App.2002) (hereinafter *Silicone* ), *rev'd in part on other grounds by In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405 (Minn.2003); *see also NSP*, 523 N.W.2d at 661, 663.

The supreme court next addressed apportionment of damages among consecutive insurers on the risk in *Domtar, Inc. v. Niagara Fire Ins. Co.*, holding that "[e]ach insurer is liable for that period of time it was on the risk compared to the *entire* period during which damages occurred." 563 N.W.2d 724, 732 (Minn.1997); *see also Silicone*, 652 N.W.2d at 62 ("Applying the law clearly set out in *NSP* and *Domtar*, the insurers are liable for their time on the risk in proportion to the entire period over which damages occur . . . .").

■ Respondents argue that the "known-loss" rule or the "loss-in-progress" rule compels the district court's conclusion that the ending date for purposes of allocation is that date that Wooddale received notice of a homeowner's intent to file a claim. The known-loss rule in Minnesota is a fraud-based defense. *Domtar*, 563 N.W.2d at 737. Under this rule,

> [o]nce the loss has occurred, there is no longer any "risk." Hence, where the loss has occurred prior to the application for insurance, the relevant question is . . . whether the parties, particularly the insured, knew of the loss at the time of application, since that knowledge would

be nearly conclusive evidence as to bad faith.

*Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 925 n. 6 (Minn.1983). Addressing the insurers' argument in *Domtar* that the known-loss rule barred coverage because the insured had purchased insurance with the knowledge of potential liability for groundwater contamination, this court held that the known-loss rule was inapplicable because knowledge of a potential for loss did not have "the same legal significance as knowledge that an insurable loss has occurred." *Domtar, Inc. v. Niagara Fire Ins. Co.*, 552 N.W.2d 738, 747 (Minn.App.1996), *rev'd in part on other grounds by Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724 (Minn.1997).

Here, Wooddale acknowledges in its brief that it has not sought indemnification for the homeowner claims from insurers that issued policies to it after the homeowners tendered their claims to Wooddale. Thus, Wooddale purchased each triggered policy with knowledge of a potential for loss and without knowledge of an actual loss. The known-loss defense as traditionally applied in Minnesota is therefore not applicable.

The respondent insurers argue, however, that the district court's conclusion is supported by an extension of the known-loss rule. Specifically, Maryland Casualty contends that continuing insurance coverage beyond the date the insured is placed on notice of a loss is at odds with the basic principle that insurance is purchased to cover risk of loss, not an existing loss. Once the homeowner placed Wooddale on notice of a claim, there was no longer any risk of loss. Similarly, Western National argues any damage occurring after the insured had · notice is not accidental and, therefore, does not result from an occurrence. As such, it would be fundamentally

unfair to hold an insurer liable for additional property damage on account of conditions known to the insured. We disagree.

Respondent's proposed extension of the known-loss rule conflicts with the actual-injury method of allocation. Under *NSP*, the insurer is liable for damages occurring during its policy period. Because the damage cannot be traced to one discrete, identifiable event, the individual instances of damage merge into one continuing occurrence. The method then assumes that the loss—the damages "occurring" during each insurer's policy period—is evenly distributed throughout the insurer's time on the risk. Thus, when a homeowner placed Wooddale on notice of a claim, the risk of loss remained the same because the occurrence was still continuing.

The respondents also contend that public policy and the need for flexibility in allocation support the district court's conclusion. According to Maryland Casualty, if the allocation date is extended to the date of remediation, the insured could maximize insurance coverage by delaying repair efforts until the start of a new policy period, or insurers could minimize their share of liability by extending the allocation period through delays. But these arguments fail to consider the nature of the claims at issue: any delay in commencing repair efforts will result in additional decay and additional expense for the insured and the insurer on the risk. Neither the insured nor the insurer has an incentive to delay.

■ We hold that the appropriate ending date when allocating liability among consecutive insurers according to the pro-rata-by-time-on-the-risk method is the date of remediation. Accordingly, the district court erred by setting the allocation end date as the date of notice.

## II

■ West Bend next challenges the district court's equal allocation of defense and investigative costs for each homeowner's claim among the insurers whose policies were triggered, notwithstanding the pro-rata allocation of damages.

There is no Minnesota authority directly addressing the allocation of defense costs among consecutively liable insurers. The respondent insurers rely heavily on the decision in *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161 (Minn.1986). That reliance is misplaced. The supreme court in *Jostens* apportioned liability for defense costs between a general-liability carrier and an umbrella carrier, each of whom had concurrent, primary coverage for the claim. *Id.* at 167. Here, each triggered insurer is consecutively, not concurrently, liable for the damages occurring during that insurer's time on the risk. Moreover, the *Jostens* court remanded for the trial court to apportion the defense costs between the two insurers, noting that "[i]f defense costs for the two sets of claims are so inextricably intertwined they cannot be fairly sorted out, the costs may be equally divided." *Id.* at 168. Thus, equal division of the claims was a default only where allocation based on each insurer's actual liability proved practically impossible.

■ Maryland Casualty argues that general principles of an insurer's duty to defend require the district court's equal allocation. An insurer's duty to defend is distinct from and broader than its duty to indemnify. *See, e.g., Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998). If any part of the claim against the insured is arguably within the policy's scope of coverage, the insurer must provide a defense to the entire lawsuit. *Id.* at 406–07. But an insurer's duty to the insured is separate and distinct from its

obligations for contribution to other insurers for the costs of defense. Thus, while an insurer has a complete duty to the insured to defend the entire suit, that duty is not implicated here, when the district court was allocating each insurer's respective contribution to the defense among the insurers.

American Family contends that an allocation of defense costs pro rata by time on the risk would encourage delay in assumption of the duty to defend, as contractually obligated insurers would contest the timing of the actual injury. This argument, too, is unpersuasive. If defense costs are allocated according to the same method as indemnity costs, an insurer has no incentive to delay assumption of the duty to defend because the insurer who defends will receive contribution from the other consecutively liable insurers for the portion of time the defending insurer was not on the risk. Thus, an insurer can defend and contest the timing of the actual injury concurrently without assuming additional liability.

The majority of jurisdictions that have addressed allocation of defense costs among consecutively liable insurers have held that defense costs should be apportioned according to the same methodology as indemnity costs. *See, e.g., Ins. Co. of N. Am. v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1225 (6th Cir.1980) (apportioning indemnity costs in claims related to inhalation of asbestos fibers according to the number of years the workers were exposed and noting that "[t]here is no reason why this same theory should not apply to defense costs"). Moreover, allocating defense costs equally based on the number of insurers leads to inequitable results. For example, assume an insured's actions progressively contaminated a property for a period of 20 years and that the insured obtained coverage for 19 of those years from one insurer, but switched insurers for the last remaining year. Under the district court's reasoning, an insurer who was on the risk for 5% of the period during which damage occurred would be liable for 50% of the costs of investigation and defense. Although the disparity in percentages is not as pronounced in the instant action, the potential for inequity is clear.

■■■ Because we conclude that the majority jurisdictions have the better-reasoned approach to this issue, we hold today that defense costs among consecutively liable insurers should be allocated according to the same method used to apportion indemnity costs. Accordingly, the district court erred in allocating defense costs equally according to the number of insurers.

## III

■■■ Safeco also appeals from the district court judgment proposing a clarification of the district court order that obligations should be apportioned on a pro-rata basis according to the number of years an insurer is on the risk. Thus, if a policy is triggered and provides coverage for a few weeks or months, the entire policy applies for purposes of allocation. We dismiss Safeco's appeal because Safeco did not raise this clarification at the district court level. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (noting that this court generally does not consider matters that were not argued and considered in the district court).

## DECISION

Because there are no genuine issues of material fact, the district court did not err in awarding summary judgment. But because we conclude that the appropriate ending date for allocation of liability among consecutive insurers under the pro-

rata-by-time-on-the-risk method is the date of remediation, the district court erred by ruling that the allocation period ended on the date of notice. Moreover, because we conclude that defense costs among consecutive insurers shall be apportioned in the same manner as indemnity costs, the district court erred by apportioning defense costs equally among the insurers.

**Affirmed in part, reversed in part, and appeal dismissed.**