# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2970
_____

Westfield Insurance Company

*Plaintiff - Appellant*

v.

Miller Architects & Builders

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 15, 2019
Filed: January 30, 2020
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

When a number of problems arose during the construction of a luxury apartment complex, the property owner sought damages against the general contractor, Miller Architects and Builders, in arbitration. Miller asked its insurer, Westfield Insurance Company, to defend it, but Westfield sued Miller in federal court instead. Westfield was unsuccessful in its effort to get a declaration freeing it

of its duty to defend Miller, and we agree with the district court[1] that it was not entitled to one.

## I.

The construction project was plagued with problems from the start, which eventually led the property owner to terminate Miller a little over a year after construction began. Over the next few months, workers allegedly discovered "significant" architectural and structural problems caused by Miller and its subcontractors. This discovery led to threats of legal action, which prompted Miller to seek coverage under its commercial general liability insurance policy with Westfield. Westfield warned Miller at the time that it was likely to deny coverage.

Westfield followed through on its warning once the property owner sought damages against Miller in arbitration. Rather than defending Miller, Westfield filed an action in federal district court seeking a declaration relieving it of its obligation to both defend and indemnify Miller. Miller took the opposite position and filed a counterclaim against Westfield.

The district court concluded that Westfield would have to defend Miller because some claims are arguably covered by the policy. So on the duty-to-defend claim, the court entered final judgment against Westfield. *See* Fed. R. Civ. P. 54(b). As for the duty to indemnify, the court was not yet ready to say whether Westfield would be responsible for any damages awarded in the arbitration, so it stayed resolution of that question. On appeal, Westfield renews its argument that it has no duty to defend Miller.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

## II.

Under Minnesota law, an insurer's duty to defend is broader than its duty to indemnify. Specifically, all Miller must show at the duty-to-defend stage is that *one* of the property owner's claims is "arguably within the [policy's] scope." *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165 (Minn. 1986) (internal quotation marks and citation omitted); *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 649 (8th Cir. 2008) (applying Minnesota law). If it can, then the burden shifts to Westfield to establish that the claims "fall *clearly* outside the scope of coverage" under one or more policy exclusions. *Jostens*, 387 N.W.2d at 166 (emphasis added); *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012). At both of these steps, our review is de novo, *see RSUI Indem. Co. v. New Horizon Kids Quest, Inc.*, 933 F.3d 960, 963 (8th Cir. 2019), and we must give the policy, including individual terms and exclusions, its plain and ordinary meaning, *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013).

We begin and end with a claim that is arguably covered under the policy: the damage caused by a leaky roof. *See Jostens*, 387 N.W.2d at 165. The property owner has alleged in the arbitration that water has come through a defectively installed roof and has damaged the "finishes and electrical work in the building's interior." This claim arguably falls under the initial grant of coverage in the policy, which includes "property damage" caused by an "occurrence." The harm to finishes and electrical work qualifies as "property damage" under Minnesota law, *see, e.g.*, *Remodeling Dimensions*, 819 N.W.2d at 611, and "faulty construction" is an "occurrence," *see, e.g.*, *Ohio Cas. Ins. Co. v. Terrace Enters., Inc.*, 260 N.W.2d 450, 452–53 (Minn. 1977). Miller has satisfied step one.

The second step is to consider the three exclusions raised by Westfield. *See Jostens*, 387 N.W.2d at 165–66. We can treat two of them together because they both depend on where the faulty work and the damage occurred. The first, exclusion (j)(5), provides no coverage for "[p]roperty damage" to "[t]hat particular part of real property" upon which "contractors or subcontractors" are still "performing

operations, if the property damage [arose] out of those operations." (Internal quotation marks omitted). The second, exclusion (j)(6), applies to "[p]roperty damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because [Miller's] work was incorrectly performed on it." (Internal quotation marks omitted). By using the words "property damage" in conjunction with "to . . . [t]hat particular part of [the] property," both exclusions are triggered only when the faulty work and the damage are to the same "part" of the property. Suffice it to say, it is far from clear that the roof, which is on the building's *exterior*, and the finishes and electrical work, which are in the building's *interior*, are the same "particular part of [the] property."

In an effort to bring the alleged property damage within one of these exclusions, Westfield urges us to interpret the phrase "[t]hat particular part of [the] property" as including the whole apartment complex, because Miller's responsibility extended to the entire project. Even assuming that Westfield has accurately described Miller's role, its interpretation gives little meaning to the three consecutive limiting words that narrow the exclusion's scope. The first of the three is "part," which means a "*piece*, or *segment* of a whole"—that is, something *less* than the whole. *The American Heritage Dictionary of the English Language* 1284 (5th ed. 2016) (emphasis added); *Webster's Third New International Dictionary* 1645 (2002). The second is the immediately preceding adjective "particular," which describes "some but not all of the members of a class or group," further narrowing the scope of what is excluded. *American Heritage*, *supra*, at 1286; Rodney Huddleston & Geoffrey K. Pullum, *The Cambridge Grammar of the English Language* 558 (2002). Finally, the word "that" serves a similar narrowing function by singling out one "particular part" from all others. *American Heritage*, *supra*, at 1802–03; *The Cambridge Grammar*, *supra*, at 538–39. The bottom line is that Westfield's interpretation reads out the words "[t]hat particular part" and would allow the excluded "part" to swallow the otherwise-included whole.

Westfield fares no better with its reliance on exclusion (*l*). As relevant here, it excludes "[p]roperty damage to [Miller's] work," but it "does not apply if . . . the

work out of which the damage [arose] was performed . . . by a subcontractor." (Internal quotation marks omitted). By its terms, this exclusion "does not apply" here because a subcontractor built and installed the roof.

In sum, the claims against Miller do not "clearly" fall outside the scope of coverage. *Jostens*, 387 N.W.2d at 166. The alleged damages from the leaky roof are arguably within the policy's scope and there are no clearly applicable exclusions. Under these circumstances, Westfield cannot "escape [its] duty" to defend Miller. *Id.*

We accordingly affirm the judgment of the district court.

_____