# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-1689
_____

The Continental Insurance Company

*Plaintiff - Appellee*

v.

Daikin Applied Americas Inc.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 17, 2020
Filed: May 21, 2021
_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Daikin Applied Americas Inc. ("Daikin Applied") appeals from the district court's grant of summary judgment in favor of The Continental Insurance Company ("Continental") declaring the scope of its duty to defend in nearly one hundred underlying lawsuits in which Daikin Applied is a defendant. We reverse this grant of summary judgment, vacate the declaration, and remand for further proceedings consistent with this opinion.

## I.

From January 1, 1967 to January 1, 1982, Continental provided comprehensive general liability insurance under a series of policies ("Continental Policies") to a company known as McQuay, Inc. for part of that period and known as McQuay-Perfex, Inc. for the remainder of that period (for simplicity, we refer to the entity Continental insured from 1967 to 1982 as "McQuay-Perfex" in this opinion). McQuay-Perfex allegedly sold a limited number of products containing asbestos. Each of the Continental Policies contained the same general insuring language, requiring Continental "to defend any suit against [McQuay-Perfex] seeking damages on account of [covered] bodily injury . . . even if any of the allegations of the suit are groundless, false or fraudulent." After January 1, 1982, Continental did not insure McQuay-Perfex.

Subsequently, a series of corporate transactions relevant to this case took place. In 1984, an entity named Snyder General Corporation that had acquired corporate divisions from other entities in the preceding years acquired McQuay-Perfex (which by then had reverted back to the name McQuay, Inc.). In 1986, Snyder General Corporation transferred its assets and liabilities to its then-subsidiary McQuay, Inc., which changed its name to SnyderGeneral Corporation. SnyderGeneral Corporation continued to acquire other entities or divisions of other entities. Then, in 1992, a new SnyderGeneral Corporation was incorporated in Delaware, and the old SnyderGeneral Corporation merged into the new entity. SnyderGeneral Corporation later changed its name, first to AAF-McQuay Inc. d/b/a McQuay International, then to Daikin Applied Americas Inc.

The relevant takeaway from this corporate history is that, since the time Continental stopped insuring McQuay-Perfex, McQuay-Perfex's rights under the Continental Policies along with the liabilities the Continental Policies insured have belonged to entities not named McQuay-Perfex, meaning these entities could be sued on account of McQuay-Perfex's insured liabilities and would be entitled to a defense under the Continental Policies if sued on this basis. Continental acknowledges as

much. At the same time, however, these subsequent entities—Snyder General Corporation, SnyderGeneral Corporation, AAF-McQuay Inc. d/b/a McQuay International, and Daikin Applied Americas Inc. ("Subsequent Entities")—held other acquired entities' liabilities, some of which are asbestos-related, as Daikin Applied acknowledges. Thus, these Subsequent Entities could be sued on the basis of non-McQuay-Perfex asbestos-related liabilities as well as McQuay-Perfex asbestos-related liabilities. It is undisputed that Continental owes no duties under the Continental Policies to a Subsequent Entity insofar as it is sued for a non-McQuay-Perfex liability.

Since 1998, numerous personal-injury asbestos lawsuits have been filed around the country naming as a defendant one or more of the Subsequent Entities. Daikin Applied eventually tendered over one hundred of these underlying lawsuits to Continental, seeking a defense under the Continental Policies on the theory that the named Subsequent Entity in each lawsuit arguably was sued on account of McQuay-Perfex's insured, asbestos-related liabilities. Continental accepted tender but fully reserved its rights to disclaim later any duty to defend or indemnify. In a few of these lawsuits, the parties have resolved whether Continental has a duty to defend. In the remaining, nearly one hundred lawsuits, the parties dispute whether Continental has a duty to defend.

Continental commenced this action in part to resolve that dispute, seeking a declaratory judgment that it has a duty to defend only in those underlying lawsuits expressly alleging in some manner that the named Subsequent Entity has been sued on account of McQuay-Perfex's liabilities, which is not true of any of the underlying lawsuits in dispute. Daikin Applied counterclaimed for a declaratory judgment to the effect that Continental owed it a duty to defend in all of the underlying lawsuits in dispute, arguing that the naming of a Subsequent Entity as a defendant was, by itself, sufficient to trigger Continental's duty to defend.

The parties filed cross-motions for summary judgment on their competing declaratory-judgment claims. The district court granted Continental's motion,

denied Daikin Applied's motion, and issued a declaration consistent with the one Continental requested. Daikin Applied appeals, challenging this declaration.

## II.

We review *de novo* the district court's grant of summary judgment, its grant of declaratory judgment, and its interpretation of state insurance law. *Selective Ins. Co. of Am. v. Smart Candle, LLC*, 781 F.3d 983, 985 (8th Cir. 2015). In this diversity action, it is undisputed that Minnesota substantive law governs. The question before us is whether the district court misapplied Minnesota law in its declaration regarding the scope of Continental's duty to defend. We conclude that it did. That said, we also find Daikin Applied's position untenable under Minnesota law. In what follows, we explain Minnesota duty-to-defend law, how Continental's position requires too much to trigger its duty to defend under Minnesota law, and how Daikin Applied's position requires too little to trigger Continental's duty to defend under Minnesota law.

### A.

An insurer such as Continental that has agreed to defend its insured in an underlying lawsuit bringing a covered claim against the insured owes the insured a duty to defend. *See Remodeling Dimensions, Inc. v. Integrity Mut. Ins.*, 819 N.W.2d 602, 616 (Minn. 2012). That said, the insured must meet a threshold burden to trigger the insurer's duty to defend. *See St. Paul Mercury Ins. v. Dahlberg, Inc.*, 596 N.W.2d 674, 677 (Minn. Ct. App. 1999).

The insured can meet this burden in one of two ways. First, it can show that at least one claim in an underlying complaint against it "is 'arguably within the policy's scope'" based on the allegations in that complaint. *See Westfield Ins. v. Miller Architects & Builders*, 949 F.3d 403, 405 (8th Cir. 2020) (brackets omitted) (quoting *Jostens, Inc. v. Mission Ins.*, 387 N.W.2d 161, 165 (Minn. 1986)); *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994) ("The general rule is that the insurer's

duty to defend is determined by considering the allegations of the complaint in light of the relevant policy language."). When determining whether a claim is "arguably" within the policy's scope, the reviewing court must construe the complaint "liberally." *Home Ins. v. Nat'l Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 535 (Minn. 2003); *cf. Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 390 (Minn. 1979) (noting that "ambiguity" is resolved in favor of finding a duty to defend). Second, the insured can come forward with extrinsic facts "within the insurer's knowledge [that] clearly establish" that a covered claim is at issue in the underlying lawsuit. *See Meadowbrook, Inc. v. Tower Ins.*, 559 N.W.2d 411, 418 n.19 (Minn. 1997).

Frequently, the issue in duty-to-defend disputes is whether the underlying lawsuit includes a covered claim. *See, e.g.*, *Garvis v. Emp'rs Mut. Cas. Co.*, 497 N.W.2d 254, 256-58 (Minn. 1993). Here, however, the dispute is about whether the underlying lawsuits have been brought against Continental's insured, which for our purposes is a Subsequent Entity sued on account of McQuay-Perfex's liabilities. Nevertheless, the same duty-to-defend principles that apply when the dispute is about whether a covered claim is at issue also apply when the dispute is about whether the underlying lawsuit has been brought against the insured. *See, e.g.*, *Home Ins.*, 658 N.W.2d at 535-36 (applying duty-to-defend principles in a dispute over whether the underlying lawsuit was brought against the insured entity); *Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins.*, 465 F.3d 900, 902-04 (8th Cir. 2006) (applying Minnesota duty-to-defend principles in a dispute over whether an individual was sued in his capacity as an insured).

Thus, Continental's duty to defend is triggered in an underlying lawsuit if Daikin Applied carries its threshold burden either by showing that allegations against a Subsequent Entity in an underlying complaint, liberally construed, "arguably" are based on McQuay-Perfex's liabilities, *see Home Ins.*, 658 N.W.2d at 535-36, or by providing extrinsic facts known to Continental that "clearly establish" that McQuay-Perfex's liabilities are at issue in the underlying lawsuit, *see Meadowbrook*, 559 N.W.2d at 418 n.19. If Continental's duty to defend is triggered by "arguabl[e]" allegations, it must defend unless and until it can show that the

underlying lawsuit "clearly" is not based on McQuay-Perfex's liabilities. *See Jostens*, 387 N.W.2d at 166. If its duty to defend is triggered by extrinsic facts clearly establishing that McQuay-Perfex's liabilities are at issue, then it must defend until the claims based on McQuay-Perfex's liabilities are "dismissed with finality." *See Meadowbrook*, 559 N.W.2d at 416. If Daikin Applied fails to carry its threshold burden, however, Continental owes it no duty to defend and cannot be required to "speculate," *see Dahlberg*, 596 N.W.2d at 677, or "assume[]," *see Garvis*, 497 N.W.2d at 258, that McQuay-Perfex's liabilities are at issue.

B.

In ruling in favor of Continental, the district court declared that "Continental's duty to defend arises only where an [underlying lawsuit] alleges liability arising out of McQuay-Perfex or where Daikin Applied has been sued as a successor to McQuay-Perfex." This declaration misapplied Minnesota law.

The error here, in essence, was the omission of one critical word: arguably. The district court founded its declaration on the determination that Continental's duty to defend is not triggered in an underlying lawsuit unless the underlying complaint "specif[ied]" that McQuay-Perfex's liabilities were at issue. But an underlying complaint need not "specifically allege" facts that make the duty to defend obvious; it is enough if the allegations make it "arguable" that an insured liability is at issue. *Westfield Ins. v. Kroiss*, 694 N.W.2d 102, 107 (Minn. Ct. App. 2005). That is, so long as the allegations in an underlying complaint, liberally construed, "implicate[]" McQuay-Perfex's liabilities, Continental's duty to defend is triggered in that underlying lawsuit. *See Home Ins.*, 658 N.W.2d at 536.

The district court relied heavily on the "after-acquired liability" rule to justify not applying the "arguably" standard, as does Continental on appeal in defending the district court's declaration, but that rule is inapposite. The after-acquired liability rule, in short, provides that a typical comprehensive general liability policy "issued to a surviving named insured . . . do[es] not cover pre-merger liabilities of a third-

party that merged into or was acquired by the survivor." *Emp'rs Ins. of Wausau v. Duplan Corp.*, No. 94 Civ. 3143 (CSH), 1999 WL 777976, at \*36 (S.D.N.Y. Sept. 30, 1999); *Land O' Lakes, Inc. v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, No. 09-CV-0693 (PJS/JSM), 2010 WL 5095658, at \*4-7 (D. Minn. Nov. 24, 2010). So, if Corporation A and Corporation B both have typical comprehensive general liability policies for 2021, and Corporation A acquires Corporation B in 2022, the after-acquired liability rule dictates that Corporation A's policy does not provide Corporation A with coverage for Corporation B's 2021 liabilities.

But the rule does not dictate that Corporation B's policy does not provide Corporation A with coverage for Corporation B's 2021 liabilities. To the contrary, generally "a surviving corporation may assert claims under insurance policies issued to an acquired company for pre-merger liabilities of the acquired company, even though the survivor was not named on the policy." *Emp'rs Ins. of Wausau*, 1999 WL 777976, at \*36. That is essentially the situation here. Daikin Applied is claiming coverage for McQuay-Perfex's liabilities under the Continental Policies, and Continental acknowledges Daikin Applied may do so. The after-acquired liability rule does not apply to prevent Daikin Applied from doing so. And the "arguably" standard still governs the question of whether the underlying complaints have sufficiently implicated McQuay-Perfex's liabilities so as to entitle Daikin Applied to the defense Continental owes McQuay-Perfex under the Continental Policies.[1]

---

[1]Continental's position that the after-acquired liability rule trumps the "arguably" standard appears to be rooted in the concern that applying the "arguably" standard in situations like this could impose an extracontractual obligation on the insurer—defending a party that later turns out not to be sued in its capacity as the insured and thus was not owed any duties under the policy—in violation of the rule that "[a]n insurer's duty to defend . . . is contractual." *See Meadowbrook*, 559 N.W.2d at 415. We note that, to the extent applying the "arguably" standard in situations like this would have such an effect, the insurer would have a "strong argument" for restitution from the party defended, which would allow it ultimately to avoid having to bear such extracontractual obligations. *See* Allan D. Windt, 1 *Insurance Claims and Disputes* § 4:5 n.5 (6th ed. 2021 update).

By failing to declare the "arguably" standard applicable here, the district court erroneously heightened Daikin Applied's burden to trigger Continental's duty to defend. Daikin Applied need only show that the underlying complaints arguably allege McQuay-Perfex liabilities. Thus, the district court's declaration cannot stand.

## C.

While we reject Continental's position adopted by the district court regarding the scope of Continental's duty to defend, we do not adopt Daikin Applied's position either. Daikin Applied proposed a declaration essentially pronouncing that Continental owes it a duty to defend in all of the underlying lawsuits in dispute. To Daikin Applied, so long as an underlying lawsuit names a Subsequent Entity, that is enough under the "arguably" standard to trigger Continental's duty to defend. We disagree.

To trigger the insurer's duty to defend, the allegations must at least "implicate[]" the named defendant in its insured capacity. *See Home Ins.*, 658 N.W.2d at 536. Where, as here, a party such as a Subsequent Entity could be sued in either an insured or a noninsured capacity, the mere naming of that party as a defendant is insufficient. Consider *Home Insurance*. There, the underlying complaint named "Waycrosse Inc." as a defendant. *Id.* Two entities had that name: a Minnesota corporation existing until 1991 that was not covered under the insurer's policy and a Delaware corporation created in 1991 that was covered under the insurer's policy. *Id.* at 526 & n.1, 535. The Minnesota Supreme Court found that the insurer had a duty to defend under the "arguably" standard, but, importantly, it did not hold this merely because "Waycrosse Inc." was named in the complaint. *See id.* at 535-36. Instead, it looked to three additional allegations. First, the description of the named Waycrosse defendant implicated the insured Waycrosse entity by referring to "a Delaware corporation." *Id.* at 536. Second, the underlying complaint filed in 1993 alleged that the defendants' misconduct was ongoing, which could have been true only of the insured Waycrosse entity. *See id.* at 525, 535-36. Third, the

complaint sought injunctive relief against the named Waycrosse defendant, which could have been obtained only against the insured Waycrosse entity. *Id.* at 536. These allegations furnished the basis for the court's determination that "a claim [was] arguably made against [the] insured." *Id.*

The *Home Insurance* court's consideration of these additional allegations would have been unnecessary if the mere naming of an entity that might, but might not, be the insured were enough to trigger the insurer's duty to defend. Its undertaking this analysis shows that more is needed to meet the "arguably" standard. While, to reiterate, McQuay-Perfex's liabilities need not be specifically alleged in an underlying complaint, something must be alleged that "implicates" those liabilities as the basis for the Subsequent Entity's inclusion in the suit in order to satisfy the "arguably" standard. *See id.* Continental "need not speculate," *see Dahlberg*, 596 N.W.2d at 677, or make the "assumption," *see Garvis*, 497 N.W.2d at 258, that the Subsequent Entity was sued on account of McQuay-Perfex's liabilities if nothing in the underlying complaint "arguably" indicates as much, *see Home Ins.*, 658 N.W.2d at 536.

Daikin Applied's position erroneously lowers its threshold burden to trigger Continental's duty to defend. Thus, we do not adopt it.

\* \* \*

Because of its declaration, the district court did not analyze each underlying lawsuit to determine whether the complaint named a Subsequent Entity arguably on account of McQuay-Perfex's liabilities in light of the allegations therein or, if not, whether extrinsic facts proffered by Daikin Applied and known to Continental about that case clearly establish this. Thus, the district court has not yet done the case-specific analysis ordinarily required to resolve a duty-to-defend dispute. *See In re PayrollAmerica, Inc.*, 459 B.R. 94, 108 (Bankr. D. Idaho 2011) (recognizing the "case-by-case" nature of the duty-to-defend analysis). Accordingly, we will remand for the district court to conduct this analysis in the first instance. *See, e.g., MPAY*

*Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1021-22 (8th Cir. 2020).

## III.

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Continental regarding the scope of its duty to defend, vacate its declaration, and remand for further proceedings consistent with this opinion.

_____