**ST. PAUL MERCURY INSURANCE COMPANY, Appellant,**

v.

**DAHLBERG, INC., Respondent.**

**No. C8–99–177.**

Court of Appeals of Minnesota.

July 20, 1999.

Review Denied Sept. 28, 1999.

Jeffrey J. Bouslog, Rikke A. Dierssen–Morice, Oppenheimer, Wolff & Donnelly, L.L.P., Minneapolis, for appellant.

Gary J. Haugen, Mary R. Vasaly, Peter J. Carlton, Maslon, Edelman, Borman & Brand, L.L.P., Minneapolis, for respondent.

Considered and decided by PETERSON, Presiding Judge, SHORT, Judge, and SHUMAKER, Judge.

## OPINION

SHORT, Judge.

This declaratory action involves the question of insurance coverage for misrepresentations made about the capabilities of the Miracle–Ear "Clarifier" hearing aid.

### FACTS

From 1988 to 1994, Dahlberg, Inc. (Dahlberg) manufactured and distributed Miracle–Ear "Clarifier" hearing aid devices that it claimed would improve hearing in crowded, noisy surroundings. Dahlberg marketed and sold this product through media advertising, direct mailings, and franchised or company-owned retail stores in all 50 states. Dahlberg's sales activities allegedly misrepresented the hearing aid's capabilities and resulted in class action lawsuits in California, Alabama, and Minnesota.

St. Paul Mercury Insurance Company (St. Paul Mercury) provided insurance coverage to Dahlberg under three commercial general liability policies in effect from July 1, 1988 through July 1, 1991. According to the policies, St. Paul Mercury agreed to "defend claims or suits, or pay judgments, settlements or medical expenses * * * for covered injury or damage." The relevant policies stated:

> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or fire damage that:
> - happens while this agreement is in effect; and
> - is caused by an event.

The policies defined bodily injury as "any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness" and an event as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In addition, the policies covered claims of bodily injury that resulted from Dahlberg's performance of or failure to perform "hearing aid professional services," which included the distribution of hearing aid devices.

In September 1993, Dahlberg tendered its defense in the California class action lawsuit. That consolidated complaint included causes of action for violations of 18 U.S.C. § 1962 (1988), negligence, unfair business practices, false advertising, and alleged damages and injuries, including emotional distress. St. Paul Mercury agreed to defend under a reservation of rights. But the California trial court denied class certification due to a predomi-

nation of individual issues and dismissed the California lawsuit without prejudice. *See Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 214–17 (N.D.Cal.1994) (dismissing suit because individual issues outweighed claim's common questions).

In July 1994, Dahlberg tendered its defense in the Minnesota class action lawsuit. That complaint contained six causes of action for false and misleading advertising in violation of Minn.Stat. § 325F.67 (1994), unlawful and deceptive business practices in violation of Minn.Stat. §§ 325F.69 (1994) and 325D.13 (1994), breach of contract, common law fraud, negligent misrepresentation, and deceptive acts against senior citizens in violation of Minn.Stat. § 325F.71 (1994). The Minnesota class sought restitution, prejudgment interest, attorney fees and costs, and equitable relief; it was subsequently certified only for claims of restitution, civil penalties, and costs for false advertising and deceptive business practices under Minn.Stat. § 8.31, subd. 3a (1994), and a claim for restitution, civil penalties, and costs and disbursements pursuant to Minn.Stat. § 325F.71, subds. 2(a), 4 (1994). St. Paul Mercury declined to defend Dahlberg and denied coverage because the class did not allege covered injuries.

Three months earlier, Dahlberg had tendered its defense in the Alabama class action lawsuit. The Alabama complaint alleged causes of action nearly identical to those alleged in the Minnesota lawsuit. As with the subsequent Minnesota complaint, St. Paul Mercury declined to defend Dahlberg and denied coverage.

In October 1994, St. Paul Mercury filed this declaratory judgment action to determine the scope of its contractual obligation to defend and indemnify Dahlberg in the Alabama and Minnesota class action lawsuits. In June 1995, Dahlberg settled both cases. The Minnesota trial court subsequently granted summary judgment in favor of Dahlberg on St. Paul Mercury's duty to defend. In March 1997, the trial court extended this judgment to apply to the Alabama action and granted partial summary judgment in favor of Dahlberg on the indemnity issue. In January 1998, a judgment of $6,884,530.05 for both class actions' attorney fees and settlement costs was entered against St. Paul Mercury.

## ISSUE

Is Dahlberg entitled to insurance coverage for attorney fees and settlement costs incurred in the Alabama and Minnesota class action lawsuits?

## ANALYSIS

■ In reviewing an order for summary judgment that construes the text of an insurance policy, we determine whether the trial court erred in its interpretation of the documents' language. *Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn.1998); *see State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (recognizing that, on appeal from summary judgment, reviewing court considers whether lower court erred as matter of law). In construing Dahlberg's policies, we apply three principles of insurance law.

■ First, an insurer's duty to defend is determined by comparing the allegations of a complaint with the relevant policy language. *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 256 (Minn.1993); *see Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 420 (Minn.1997) (noting that, in assessing whether insurer has duty to defend, court must focus on claim); F. Malcolm Cunningham, Jr. & Amy L. Fischer, *Insurance Coverage In Construction—The Unanswered Question*, 33 Tort & Ins. L.J. 1063, 1081–82 (1998) (noting duty to defend generally arises if complaint alleges damages within policy's coverage); *see also Clemons v. State Farm Fire & Cas. Co.*, 879 S.W.2d 385, 392 (Tex. App.1994) (stating "[u]nless the petition alleges *facts* within the coverage of the policies, the insurer has no duty to defend") (emphasis in original).

■ Second, if a complaint fails to establish coverage, an insurer still must accept tender of defense if it has independent knowledge of facts that may establish coverage. *Garvis*, 497 N.W.2d at 258; *Johnson v. AID Ins. Co.*, 287 N.W.2d 663, 665 (Minn.1980); *see Franklin*, 574 N.W.2d at 407 (recognizing insurer is required to defend claim if on notice that claim is within policy's coverage); 14 George J. Couch et al., *Couch on Insurance* § 51:51, at 499–501 (2d rev. ed.1982) (noting duty to defend is fixed on facts learned from complaint, insured, or other sources); *Cunningham, supra,* at 1084 (acknowledging extrinsic evidence test may allow coverage for poorly pleaded complaint).

■ And third, if an insured fails to meet its burden of presenting a covered claim through a complaint or extrinsic evidence, an insurer need not speculate about facts that may trigger its duty to defend. *See Garvis*, 497 N.W.2d at 258 (holding insurer was not required to participate in discovery because complaint's facts did not notify insurer of covered claim); Couch, *supra,* § 51:51, at 501 (recognizing duty to defend is triggered only when insurer learns of facts giving rise to potential claim); *see also City of Salina v. Maryland Cas. Co.*, 856 F.Supp. 1467, 1480 (D.Kan.1994) (stating insurer only is required to consider facts "brought to its attention"); *Aerojet–General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 70 Cal.Rptr.2d 118, 948 P.2d 909, 921 (Cal. 1997) (noting insurer's duty to defend is contractual and not triggered absent claim that possibly triggers coverage).

■ It is undisputed that St. Paul Mercury contractually agreed to defend Dahlberg against claims involving "covered injury or damage." Although the relevant policies included "mental anguish" as a covered bodily injury, it also is undisputed that the words "bodily injury" or "mental anguish" are not contained in the Alabama and Minnesota complaints. Despite these omissions, Dahlberg argues that St. Paul

Mercury had actual knowledge of potentially covered claims in both lawsuits based on the allegations of emotional distress contained in the California class action complaint. We are asked to determine whether the intentional decision to eliminate individualized allegations of emotional distress in the Alabama and Minnesota class action complaints affects the determination of insurance coverage.

In evaluating the scope of Dahlberg's coverage, we recognize that insurance law has established a partiality in favor of insureds. *See Franklin*, 574 N.W.2d at 407 (recognizing ambiguities are resolved in favor of insured); Clarance E. Hagglund et. al., *Minnesota Insurance Law* 16–17 (1995) (noting established principle of interpreting insurance contracts in favor of insured); Douglas R. Richmond, *Reimbursing Insurers' Defense Costs: Restitution and Mixed Actions*, 35 San Diego L.Rev. 457, 465 (1998) (stating questions of whether defense is owed are always resolved in insured's favor because "defense costs may be ruinous"). But, because an insurer's duty to defend is contractual, insureds still must meet a minimum threshold for establishing coverage through their complaints or extrinsic evidence. *See Boedigheimer v. Taylor*, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970) (noting burden of proving existence of coverage rests with insured); Couch, *supra,* § 51:35, at 444 (recognizing duty to defend is contractual); *see also Aerojet*, 70 Cal.Rptr.2d 118, 948 P.2d at 921 (stating insurers do not contract to pay defense costs for claims clearly outside coverage). Because the complaints against Dahlberg failed to meet this threshold, we conclude St. Paul Mercury did not breach its contractual duty in denying defense of the Alabama and Minnesota actions.

Dahlberg first failed to meet the initial threshold of establishing a covered claim by presenting complaints that excluded allegations of bodily injury or mental anguish. *See Garvis*, 497 N.W.2d at 256 (concluding complaint that did not allege

bodily injury or mental anguish did not create duty to defend). Not only did the Alabama and Minnesota complaints fail to allege such injuries, they also omitted claims typically resulting in mental anguish or general bodily injury. *Cf. Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md.App. 540, 688 A.2d 496, 506–07 (Md.Ct.Spec.App.1997) (concluding coverage may be affected by intentional selection or omission of allegations). Instead, both complaints emphasized the classes' monetary damages rather than physical injuries. The Minnesota complaint specifically stated "[p]laintiffs seek compensation for economic damage" and the class is seeking "monetary damages." Likewise, the Alabama complaint stated Dahlberg's misrepresentations "resulted in great monetary benefit to Dahlberg and great loss to the class" and, as a result, the plaintiffs "were defrauded out of substantial sums of money.'"

Dahlberg also failed to establish a covered claim by neglecting to provide any extrinsic evidence suggesting potential coverage. *See Johnson*, 287 N.W.2d at 665 (noting duty to defend may arise when insured comes forward with facts suggesting potential coverage). Once St. Paul Mercury denied defense, Dahlberg failed to notify St. Paul Mercury that both Alabama and Minnesota class members had suffered covered bodily injuries. *See Garvis*, 497 N.W.2d at 257–58 (holding insurer not required to defend where insured did not indicate that possible damages had physical manifestations warranting coverage); *cf. Bituminous Cas. Corp. v. Travelers Ins. Co.*, 122 F.Supp. 197, 201 (D.Minn. 1954) (holding insured who informed insurer of facts implicating coverage was entitled to defense). In fact, not only did Dahlberg fail to provide evidence of physical injury until almost two years after it tendered its defense in both actions, it also excluded compensation for any form of bodily injury in both settlement agreements.

■ Finally, because Dahlberg did not present the possibility of covered bodily injury through the complaints or extrinsic evidence, it failed to establish a covered claim simply by relying on allegations contained in the earlier California complaint. Although the California class action arose from the same set of factual circumstances, the California complaint differed from the Alabama and Minnesota complaints by including specific allegations of emotional distress and involving claims that usually involve bodily injury. Because the Alabama and Minnesota complaints did not allege such injuries or even incorporate such allegations from the California complaint by reference, St. Paul was under no obligation to investigate into the possibility of coverage based on this earlier, separate, and dissimilar action. *See Garvis*, 497 N.W.2d at 258 (holding insurer not required to participate in discovery proceedings where complaint and extrinsic evidence failed to indicate potential coverage). To hold otherwise would require insurers to speculate about possible coverage when the complaint against their insureds and extrinsic evidence clearly fail to establish a covered claim.

Under these circumstances, no facts suggest St. Paul Mercury breached its contractual duties to Dahlberg. The trial court erred as a matter of law in concluding St. Paul Mercury breached its duty to defend. Because we reverse on this ground, we need not address St. Paul Mercury's arguments on its duty to indemnify or its motion to extend discovery. *See Meadowbrook*, 559 N.W.2d at 415 (recognizing duty to defend is broader than duty to indemnify).

## DECISION

St. Paul Mercury did not breach its contractual duties to Dahlberg because Dahlberg failed to demonstrate grounds for coverage through facts in the complaints or extrinsic evidence. Knowledge of claims made in an earlier California lawsuit, which were not pleaded in the Ala-

bama and Minnesota class action lawsuits, is insufficient to trigger St. Paul Mercury's contractual duties to Dahlberg.

**Reversed.**