# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-3863

_____

Travelers Property Casualty　　*
Company of America, formerly　　*
known as Travelers Indemnity　　*
Company of Illinois; Greg Paine,　*　　Appeal from the United States
　　　　　　　　　　　　　　　*　　District Court for the
　　　　Appellants,　　　　　　*　　District of Minnesota.
　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　*　　　　[PUBLISHED]
　　　　　　　　　　　　　　　*
General Casualty Insurance　　　*
Companies, doing business as　　*
Regent Insurance Company,　　　*
　　　　　　　　　　　　　　　*
　　　　Appellee.　　　　　　　*

_____

Submitted: May 15, 2006
　　Filed: October 13, 2006

_____

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

In this diversity-based declaratory judgment action, Travelers Property Casualty Company of America (Travelers), a Connecticut corporation, and its insured, Mr. Greg Paine, a Minnesota resident, seek a determination of whether General Casualty Insurance Companies, doing business as Regent Insurance

Company (Regent), a Wisconsin Corporation, had a duty to defend Mr. Paine in a negligence suit brought against him by a student who was injured in a physical education class at Shattuck-St. Mary's School (Shattuck). Travelers, which insures Mr. Paine as a member of the Professional Golfers' Association of America (PGA), provided funds for his defense through a Loan Receipt Agreement and now seeks contribution and indemnity from Regent, which insures the golf course that employs Mr. Paine as its head golf professional. The district court[1] granted summary judgment to Regent, finding it had no duty to defend, and we affirm.

I.

Mr. Paine is the head golf professional for Legacy Golf Corporation (Legacy), an 18-hole golf course in Faribault, Minnesota. In this position, he manages the golf shop year round and manages the teaching programs at the golf course among other duties relating to the golf operation. His employment agreement with Legacy provides that his compensation consists of a salary, any income he earns from giving golf lessons, and any bonuses he may receive. His employment agreement requires him to use his best efforts to perform all duties required by the agreement at such places as the needs and business of Legacy may require, and he must market the course and promote membership growth. Legacy offers golf lessons to the public and its members, and it advertises golf lessons by its PGA golf professional. Mr. Paine's only duty at Legacy during the winter months is managing the golf shop, which requires about 20 to 25 hours of work a week at that time of the year.

Mr. Paine entered into a verbal agreement with Shattuck to teach a 45-minute physical education golf class at the school beginning at 8:30 a.m. each morning for three months from December 2002 through February 2003. Shattuck is a college

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

preparatory boarding and day school in Faribault, Minnesota, for students in grades 6 through 12, located on property adjacent to Legacy. Shattuck is also the sole shareholder of Legacy, but the two are separate legal entities. While Mr. Paine had previously taught golf lessons at Legacy for interested Shattuck students as an extracurricular activity in the spring, summer, and fall, this was the first physical education class that he taught at the school during the school day. Mr. Paine negotiated this teaching job at Shattuck with Headmaster Dennis Brown and earned $1,500 for the semester. Mr. Paine worked with Headmaster Brown and Shattuck Athletic Director John Sommer in designing an indoor golf facility in the basement of Shattuck's gymnasium that was then used for the class. Mr. Paine billed Shattuck for the agreed upon cost of his services using Legacy invoices but stating on the invoice that the check should be made to Greg Paine.

On January 17, 2003, during Mr. Paine's golf class at the school, Shattuck student Lilian Wu was struck in the head by a golf ball, suffering a severe and permanent brain injury. Her parents commenced a lawsuit on her behalf in district court, naming Shattuck and Mr. Paine as the only defendants. See Lilian Wu, et al. v. Shattuck-St. Mary's School, No. 03-4870 (D. Minn. filed Aug. 8, 2003). The amended complaint claimed that Shattuck was vicariously liable for the acts of its agent, Mr. Paine, and that the golf class was a joint enterprise between Mr. Paine and Shattuck.

Regent, Legacy's insurer, denied any duty to defend Mr. Paine in the Wu lawsuit on the ground that Mr. Paine was not an insured under Legacy's policy because he was not acting within the scope of his employment with Legacy or performing any duties related to Legacy's business at the time of the accident. As a PGA member, Mr. Paine had obtained general and excess liability insurance issued by Travelers through a PGA members' policy that provided coverage "while . . .

teaching the game of golf for or on behalf of the [PGA]."[2] (Appellants' App. at 219.) Travelers agreed to loan Mr. Paine sufficient funds to defend against and resolve the Wu lawsuit through a Loan Receipt Agreement.[3] On May 20, 2005, the district court[4] approved a settlement in the Wu case.

Travelers and Mr. Paine filed the current suit against Legacy's insurer, Regent, seeking a declaratory judgment that Regent had a duty to defend Mr. Paine in the Wu lawsuit and seeking indemnity on the ground that Mr. Paine is an insured and the Regent policy provides the primary coverage. The parties filed cross motions for summary judgment and partial summary judgment. After comparing the allegations of the Wu complaint to the relevant policy language and considering the relevant extrinsic evidence, the district court concluded that Regent had no duty to defend Mr. Paine as a Legacy employee because he was not acting within the scope of his employment or to further his employer's interests, and that there was no allegation that he was acting as Legacy's golf professional. Accordingly, the district court granted summary judgment to Regent. Travelers and Mr. Paine appeal.

---

[2] We express no opinion as to whether Mr. Paine was "teaching the game of golf for or on behalf of the [PGA]" within the meaning of the Travelers policy, as that issue is not before us. The only issues before us are whether Regent had a duty to defend, and if so, whether Regent's policy should be considered the primary coverage.

[3] The Loan Receipt Agreement provides that Mr. Paine is not personally liable to Travelers and that Travelers' right to repayment is limited to its potential recovery against Regent. (Appellants' App. at 297.)

[4] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party. See Noran Neurological Clinic, P.A. v. Travelers Indem. Co., 229 F.3d 707, 709 (8th Cir. 2000). We affirm the grant of summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We apply de novo review to the district court's interpretation of an insurance policy, which is a question of law. Noran Neurological Clinic, P.A., 229 F.3d at 709. Similarly, "[t]he question of whether a legal duty to defend or indemnify arises is a legal question subject to de novo review." Metro. Prop. and Cas. Ins. v. Miller, 589 N.W.2d 297, 299 (Minn. 1999).

Minnesota law governs this dispute and dictates that an insurer's duty to defend is determined as follows:

> First, an insurer's duty to defend is determined by comparing the allegations of a complaint with the relevant policy language. Second, if a complaint fails to establish coverage, an insurer still must accept tender of defense if it has independent knowledge of facts that may establish coverage. And third, if an insured fails to meet its burden of presenting a covered claim through a complaint or extrinsic evidence, an insurer need not speculate about facts that may trigger its duty to defend.

St. Paul Mercury Ins. Co. v. Dahlberg, Inc., 596 N.W.2d 674, 676-77 (Minn. Ct. App. 1999) (internal citations omitted). The "duty to defend an insured . . . arises when any part of the claim is 'arguably' within the scope of the policy's coverage," and an insurer wishing "to escape that duty has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165-66 (Minn. 1986). The relevant extrinsic evidence is

that which, at the time the defense is tendered, id. at 166, is independently known by the insurer, see Dahlberg, 596 N.W.2d at 677. There is no duty to defend one who is not an insured under the policy, but "[a]n insurer's duty to defend claims arguably within the policy's coverage extends until it can be concluded *as a matter of law* that there is no basis on which the insurer may be obligated to indemnify the insured." Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 416 (Minn. 1997).

In the first step of the analysis set forth in Dahlberg, that is, comparing the Wu amended complaint to the relevant contract language of Regent's policy, see 596 N.W.2d at 676, we agree with the district court's conclusion that no duty to defend arose on the part of Regent. Regent's policy provides coverage for bodily injury damages caused by Legacy employees, "but only for acts within the scope of their employment by you [Legacy] or while performing duties related to the conduct of your [Legacy's] business." (Appellants' App. at 101.) The policy also provides general liability insurance in a special endorsement for "any person(s), other than your [Legacy's] 'employees,' while acting as your [Legacy's] tennis or golf professional" for damages "arising out of professional services as a tennis or golf professional." (Id. at 129.) The Wu complaint did not allege that Mr. Paine was Legacy's employee or golf professional or that he was performing duties relevant to the conduct of Legacy's business. Those pleadings alleged only that Shattuck was negligent in supervising its agent, Mr. Paine, and that Mr. Paine and Shattuck were engaged in a joint enterprise. Thus, the complaint alone did not provide Regent with notice of an arguable claim of coverage that would trigger the duty to defend.

The appellants argue that Regent had a duty to defend Mr. Paine under the second step of the Dahlberg analysis, see 596 N.W.2d at 677, because they presented sufficient extrinsic evidence to establish that the Wu claim was arguably within the scope of the Regent policy's coverage. The district court concluded that Mr. Paine's own deposition in the Wu case demonstrates that he was not acting as Legacy's agent at the time of the injury, that his employment contract is silent as to where he teaches

golf, and that any benefit to Legacy from his teaching at Shattuck was not sufficiently related to his employment with Legacy to make out an arguable claim of coverage under the Regent policy. Having examined the extrinsic evidence either presented to Regent or within Regent's knowledge at the time the request for a defense was tendered, we agree with the district court's conclusion that the claim was not arguably within the scope of the Regent policy's coverage.

The extrinsic evidence includes the letters that provided Regent with notice of the claim. They indicate that Mr. Paine was a Legacy employee and was instructing a class at Shattuck when the injury occurred, but also included with the request for tender of defense were the pleadings in the Wu case, Mr. Paine's deposition and recorded statement from the Wu lawsuit, and a copy of Mr. Paine's employment contract with Legacy. Mr. Paine's own deposition in the Wu case establishes that he independently negotiated and contracted with Shattuck to teach the golf class, that he was paid and supervised by Shattuck, that he did not share this compensation with Legacy, and that his only duty at Legacy during the winter was to manage the golf pro shop. He described his teaching at Shattuck during the winter as over and above his job with Legacy. His employment contract with Legacy permitted him to independently give golf lessons and keep the income from them but did not specifically require him to teach Shattuck students. His contract permits but does not purport to control his teaching activities, and his set salary and employment status with Legacy are unaffected by his independent teaching obligations.

To the extent Mr. Paine's job description requires him to do some teaching as Legacy's head golf professional, it does so in the context of his responsibility to manage the pro shop, which is at the golf course. Specifically, his job description requires him to "manage the following aspects of the pro shop operation . . . – Teaching programs." (Appellants' App. at 316.) Teaching a physical education golf class at Shattuck, a job he independently negotiated during the slow winter months when there were no teaching programs at the pro shop or golf course, cannot be

considered a teaching program that is an aspect of the pro shop operation, absent some specific extrinsic evidence showing such a relationship. We see none.

Mr. Paine asserts in his affidavit in this declaratory judgment action that he always considered providing golf lessons to the public as part of his duties for Legacy because he is expected to give lessons and to promote member growth. There is no dispute that he is required to promote member growth and that giving golf lessons to the public may aid this objective. Additionally, his professional objectives at Legacy provide broadly that Mr. Paine must continue to "improve [his] image as a Pro and the Legacy's image as a whole with [its] customers and the community." (Appellants' App. at 396, "Head Golf Professional Objectives 2003 Season," signed in April 2003 (three months after the incident at the school).) We cannot ignore, however, the specific circumstances of this case which do not present a situation where he offered himself to teach golf to the public in a manner designed to bring new members to Legacy. To the contrary, Mr. Paine privately contracted with a private school to teach a physical education golf class to its students during the school day. Shattuck students who are on the golf team use the Legacy course regardless of whether they are members, and as Shattuck is in part a boarding school, it is pure speculation to assume that the school class would bring in parents as members. There is no indication that Mr. Paine promoted the business of Legacy in any way at the school other than through the residual, but tenuous, benefit that is possible to any golf course from someone teaching a child how to golf. See generally Hentges v. Thomford, 569 N.W.2d 424, 429 (Minn. Ct. App. 1997) (holding as a matter of law that where a pastor's injurious conduct occurred off church property on the pastor's day off, was not part of a church-sponsored activity, "and was outside the church's physical and spiritual influence, the residual benefit of fostering ongoing pastoral-parishioner relationships is too tenuous in its connection to [the pastor's] employment to support a determination that he was acting within its scope").

This case is analogous to the Hentges case, in which the Court of Appeals of Minnesota considered whether a pastor's conduct of injuring a parishioner in a hunting accident was within the scope of the pastor's employment with the church for purposes of rendering the church vicariously liable for the injury. The Hentges court's analysis turned on the consideration of whether "the conduct was, to some degree, in furtherance of the interests of his employer." 569 N.W.2d at 427-28. The court concluded as a matter of law that any benefit to the church from the hunting excursion was "too tenuous" to support a determination that the pastor was acting within the scope of his employment or "in furtherance of the employer's interest," even where there was evidence from other ministers who testified that "social and recreational interaction was important to pastoral-parishioner relationships." Id. at 428-29.

Travelers and Mr. Paine assert that the Hentges case is distinguishable because it involved a pastor engaged in the leisure activity of hunting when the accident occurred–not one of the pastor's job responsibilities. They contend that Mr. Paine's conduct of teaching golf, which is undoubtedly one of his job responsibilities as Legacy's golf professional, is therefore arguably within the scope of his employment, related to the conduct of Legacy's golf business, and within his capacity as Legacy's golf professional, and thus a duty to defend arises. While this argument is initially appealing, we conclude that it paints with too broad a brush by characterizing every golf teaching activity in which Mr. Paine might engage as relating to Legacy's business or as performed in his capacity as Legacy's golf professional. We agree with the district court that Hentges is sufficiently analogous to the case at hand to permit a similar conclusion in this case, i.e., that the tenuous nature of any benefit or relation to Legacy's business is no greater than the benefits to the church in Hentges. Setting aside generalizations and unsupported inferences, we see no extrinsic evidence in this case to indicate that Mr. Paine's teaching at Shattuck was arguably within the scope of his employment at Legacy, was arguably related to the conduct of Legacy's business, or was arguably within his capacity as Legacy's golf professional. Where

the facts did not demonstrate an arguable claim that coverage exists, Regent was not obligated to speculate about facts that may trigger its duty to defend. See Dahlberg, Inc., 596 N.W.2d at 677.

The appellants assert that Mr. Paine was arguably performing a duty related to the conduct of Legacy's business because the school is Legacy's sole shareholder. This argument gives too much significance to the relationship between two separate legal entities. While the relationship and physical proximity between the two entities might well warrant a feeling of obligation on the part of Mr. Paine to accommodate Shattuck school students within the teaching programs organized through his management of the pro shop, it does not follow that the conduct of Legacy's business would require him to teach a physical education class at the Shattuck school. Such an inference does not arise from the mere existence of a shareholder relation. See Di Re v. Cent. Livestock Order Buying Co., 74 N.W.2d 518, 523 (Minn. 1956) ("Ordinarily two or more corporations are considered separate and distinct entities even though the same individuals are the incorporators of, or own stock in, the several corporations, and even though such corporations may have the same persons as officers.").

Finally, the appellants argue that the district court erred by not explicitly considering Mr. Paine's alternative basis for coverage as Legacy's golf professional. There is no dispute that Mr. Paine was employed as Legacy's full-time head golf professional when he simultaneously taught at Shattuck, and the district court noted that Regent correctly asserted that the Wu amended complaint made no allegation that Mr. Paine was acting as Legacy's golf professional at the time of the injury. Even if the district court erred by not explicitly considering whether the extrinsic evidence showed that he arguably was providing services as Legacy's golf professional, the outcome would not have been different. The endorsement provides that one who is not an employee but is acting as Legacy's golf professional is an additional insured while providing professional services but only "while acting as your [Legacy's]. . .

golf professional." (Appellants' App. at 129.) The district court correctly noted that there was no allegation in the Wu lawsuit that Shattuck hired Mr. Paine in his capacity as, or because he was, Legacy's golf professional. The letters giving notice of the claim assert that Mr. Paine was a Legacy employee while he taught at Shattuck, but by the terms of the special endorsement, it applies to a person other than a Legacy employee. The only extrinsic evidence from which it could be inferred that Mr. Paine was acting as Legacy's golf professional at Shattuck was his use of Legacy invoices to bill Shattuck for his teaching. We conclude that those invoices, which clearly direct payment to Mr. Paine personally, are insufficient evidence in themselves to create an arguable basis for coverage on the ground that Mr. Paine was acting as Legacy's golf professional at the time of the injury.

For the reasons already stated, we reject the appellants' contention that the district court decided disputed facts or weighed the credibility of the evidence. To the contrary, the district court correctly considered undisputed facts in determining as a matter of law that neither the complaint in the Wu case nor the extrinsic evidence known to Regent presented a situation in which there arguably was coverage under the Regent policy. Accordingly, Regent had no duty to defend.

## III.

We affirm the judgment of the district court.

BYE, Circuit Judge, dissenting.

The majority holds Regent had no duty to defend Paine. Given both the policy language and the extrinsic evidence presented, I cannot agree. By providing golf instruction at Legacy's sole shareholder Shattuck, Paine was arguably performing duties related to the conduct of Legacy's golf business, and Regent has failed to meet

its burden of establishing the cause of action clearly falls outside the scope of coverage.

Under Minnesota law, "an insurer's duty to defend arises when any part of the claim against the insured is *arguably within* the scope of protection afforded by the policy." Franklin v. Western Nat'l Mut. Ins. Co., 574 N.W.2d 405, 406-07 (Minn. 1998) (emphasis added). The burden is on the insurer attempting to escape coverage to establish "all parts of a cause of action *clearly* fall outside the scope of coverage." Id. at 407 (emphasis added). The insured is required to meet only a "minimum threshold" to establish a duty to defend either through his complaint or through extrinsic evidence. St. Paul Mercury Ins. Co. v. Dahlberg, Inc., 596 N.W.2d 674, 677 (Minn. Ct. App. 1999). Finally, "in determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured" and, "[a]s a result, unless the pleadings and facts clearly establish that the claim falls outside the policy terms, the duty to defend arises." John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 418 (8th Cir. 1991) (citations and quotations omitted) (applying Minnesota law).

Regent's policy covers Legacy employees "for acts within the scope of their employment . . . or while performing duties related to the conduct of [Legacy's] business."[5] This provision has two-prongs. Under Minnesota law, the provisions in a policy should be read together to give them all meaning. Lener v. St. Paul Fire & Marine Ins. Co., 263 N.W.2d 389, 393 (Minn. 1978) (noting a "construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its

---

[5]The policy also contains a special endorsement providing coverage for "any person(s), *other than* [Legacy's] 'employees,' while acting as [Legacy's] tennis or golf professional" for damages "arising out of professional services as a tennis or golf professional." (emphasis added). Because this endorsement contains an exclusion for Legacy employees, and there is no dispute that Paine is a Legacy employee, I agree with the majority that there is no arguable coverage under this provision.

provisions and is consistent with the general intent") (citation omitted). The two prongs in the instant provision are joined by the term "or" which connotes disjunction. See United States v. Wilson, 41 F.3d 399, 401 (8th Cir. 1994) ("Terms connected by 'or' . . . normally are read to have separate meanings and significance"); United States v. Smeathers, 884 F.2d 363, 364 (8th Cir. 1989) ("Normally, the word 'or' connotes disjunction."). Indeed, the Fourth Circuit, in interpreting policy language identical to what is presented here, determined the latter prong must be construed to have meaning independent of the former because the prongs are joined by the word "or." Fed. Ins. Co. v. Ward, 166 Fed. Appx. 24, 28 (4th Cir. 2006) (unpublished opinion) (finding the two prongs were not synonymous and holding "[a]s the two phrases are set off by the word 'or,' we are persuaded that they are intended to express distinct concepts"). Thus, under these principles of construction, in order to give the latter "related to" prong meaning, it must be construed as something distinct from the former "scope of employment" prong. It follows the "related to" prong broadens coverage to acts undertaken by employees relating to Legacy's business, even if those acts are outside the scope of their employment. See State Auto. Mut. Ins. Co. v. Sec. Taxicab, Inc., 144 Fed. Appx. 513, 519-20 (6th Cir. 2005) (unpublished opinion) (reading "related to" prong as broader than "scope of employment" prong to include acts outside the insured's scope of employment). The majority follows the district court in not addressing the distinction between these two prongs. This reading of the policy ignores the use of the term "or" and effectively nullifies the "related to" prong.

The majority also follows the district court in relying on Hentges v. Thomford, 569 N.W.2d 424 (Minn. Ct. App. 1997), to support its dual conclusion that Paine's instruction at Shattuck was neither within the scope of his employment nor related to the conduct of Legacy's golf business. The Hentges case is certainly relevant to the "scope of employment" prong, as the court there specifically determined the pastor/insured was not "acting within the scope of [his] employment" when he went hunting with a parishioner. In Hentges, however, the court did not ask whether the

pastor was performing duties related to the conduct of his church/employer. The court did not conduct this inquiry because there was no "related to" policy language at issue. The Minnesota Supreme Court's analysis turned on whether "the conduct was, to some degree, in furtherance of the interests of [the] employer." Hentges, 569 N.W.2d at 427. As is discussed below, whether or not conduct benefits an employer is not the relevant inquiry with regards to the "related to" prong. Thus Hentges does not, as the majority contends, lend support to the conclusion of Paine's golf instruction at Shattuck not being related to Legacy's golf business.

I agree with the majority as to Paine and Travelers not having established Paine was acting within the scope of his employment when he taught golf at Shattuck. Paine's employment contract does not specify where he must teach golf and does not require him to teach at Shattuck. In his deposition, Paine testified his instruction at Shattuck was outside his job requirements at Legacy. Like in Hentges, Paine was working at Shattuck on his day off. Indeed, he was working during the off season. Also, Paine kept the earnings from his instruction at Shattuck. Although Paine claims teaching the students at Legacy's sole shareholder arguably fits within his enumerated duties of promoting the golf course, creating more business for the golf course, and providing private lessons to members of the general public, this is not enough to distinguish Hentges. Like in Hentges, any residual benefit to Legacy is too insubstantial to support a determination of Paine as acting within the scope of his employment when he taught at Shattuck.

I do not agree Paine and Travelers have failed to establish he was arguably performing duties related to the conduct of Legacy's business. Neither this court nor any Minnesota court has construed policy language similar to the "related to" prong in this policy. Those courts which have construed similar language draw a distinction between personal and professional conduct—those activities which are purely personal cannot be related to the conduct of a business. In Fed. Ins. Co. v. Ward, the Fourth Circuit determined the act of employees flicking cigarette ashes into a waste

basket full of paper was, as a matter of law, not a duty "related to the conduct" of the employer's business because the act could not be characterized as done in the performance of a work-related duty. Fed. Ins. Co., 166 Fed. Appx. at 30;  see also Nova Cas. Ins. Co. v. Anderson, No. 804CV2085T27TGW, 2005 WL 3336496, at *4 (M.D. Fla. Dec. 8, 2005) (finding no coverage where a construction worker provided alcohol to a minor co-worker who was later involved in a car accident, as the employer was "not in the business of providing alcohol to his employees").

The majority's interpretation of the "related to" prong as simply a reiteration of the "scope of employment" prong renders it superfluous.  Under Minnesota law, such a narrow reading must be avoided.  Legacy is in the golf business.  Shattuck is Legacy's sole owner and shareholder and Legacy's sole purpose is to provide a revenue stream for Shattuck.  The two entities are physically adjacent to one another.  The Legacy course is the "home course" for Shattuck's student golf teams.  Legacy's board of directors serves "at the pleasure of" Shattuck.  Furthermore, Legacy has a board member whose primary duty is to maintain a working relationship with the school and to create an "interface" between the two entities.  The majority under-emphasizes the importance of the relationship between Legacy and Shattuck.  They are simply too interconnected to support the majority's conclusion that Paine's golf instruction at Shattuck was not related to Legacy's golf business.

Even without this relationship there is little doubt Paine's *golf* instruction at Shattuck is arguably related to the conduct of Legacy's *golf* business.  The extrinsic evidence shows Paine, during the off season at Legacy, was providing golf instruction at Shattuck.  Legacy was well aware Paine was providing this instruction.  Paine billed for the instruction using Legacy invoices.  Paine used Legacy equipment while teaching at Shattuck.  During the spring, summer and fall, Paine provided similar instruction to Shattuck students on Legacy property.  Paine's employment agreement contemplates his providing golf instruction and allows him to keep any earnings derived from giving golf lessons.  The agreement does not distinguish between

lessons offered on or off Legacy property. While this evidence is not enough to establish Paine was acting within the scope of his employment at Legacy, it is enough to show his instruction at Shattuck was arguably related to the conduct of Legacy's business. Furthermore, this case involves a golf professional who was actually teaching golf, rendering it distinguishable from those cases where employees were engaged in purely personal activities unrelated to either their job duties or to the nature of their employer's business. Although Paine's instruction at Shattuck may be viewed as an ancillary job, the business/personal distinction drawn in the above-cited cases favors finding coverage.

Because of the close relationship between Legacy and Shattuck and the nature of Paine's work at both, Paine's instruction at Shattuck should be considered related to the conduct of Legacy's business, and the majority erred in affirming the district court's holding of no coverage even arguably existing under this prong. Minnesota law requires us to give Paine the benefit of the doubt. The majority, by its narrow reading of the "related to" prong, ignores this precept and instead extends the benefit to Regent.

For the above reasons, I respectfully dissent.

_____